**NATIONAL COALITION FOR STUDENTS WITH DISABILITIES, etc., et al., Plaintiffs,**

v.

**Jeb BUSH, etc., et al., Defendants.**

**No. 4:00CV442–RH.**

United States District Court, N.D. Florida, Tallahassee Division.

Nov. 27, 2001.

Bruce Alexander Minnick, John Alexander Minnick, Bruce A Minnick PA, Michael J. Beattie, National Coalition Students with Disabilities, Fairfax, VA, Thomas Robert Moore, Tom R. Moore PA, Tallahassee, FL, for National Coalition for Students with Disabilities Education and Legal Defense Fund, Erica Tracy, Suzanne Clark, and Derron Frazier.

George N. Meros, Jr., Gray Harris & Robinson PA, Tallahassee, FL, for Jeb Bush.

Alvin F. Linsay, III, Walter James Harvey, Steel Hector & Davis, Miami, FL, for Katherine Harris and Clay Roberts.

### ORDER ON ENTITLEMENT TO ATTORNEY'S FEES

HINKLE, District Judge.

In this action under the National Voter Registration Act, the parties entered a Settlement Agreement, under which two of the defendants agreed to a meaningful but comparatively minor portion of the relief plaintiffs had sought, and the issue of attorney's fees was explicitly left open. With the concurrence of those two defendants, a final judgment was entered, under which they were ordered to abide by the Settlement Agreement, jurisdiction was retained to enforce the Settlement Agreement, and the issue of attorney's fees was left open.

In accordance with the Local Rule bifurcating attorney's fee proceedings into separate stages of liability and amount, plaintiffs now have moved for a determination that they are entitled to an award of fees, under the National Voter Registration Act's "prevailing party" attorney's fee provision. Because plaintiffs obtained a court order that altered their legal relationship with two defendants in a meaningful way, I grant the motion, as against those two defendants. That the relief obtained was comparatively minor is a factor that will be considered in determining the amount of fees to be awarded but does not bar the recovery of fees altogether.

### Background

Plaintiffs are disabled individuals and an association that represents them. They filed a class action complaint on November 27, 2000, in the midst of the 2000 presidential election litigation frenzy. Plaintiffs alleged that three named plaintiffs did not register or vote in that election as a result of violations of the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg, which addresses, among other things, registration of voters with disabilities. Plaintiffs named as defendants Florida Governor Jeb Bush, Secretary of State Katherine Harris, Director of the Division of Elections Clay Roberts, and various "John Doe" defendants.

Plaintiffs sought to block certification of the November 2000 Florida election for President, to compel a new special election for President at which disabled persons who did not vote on November 7 would be allowed to vote, to require defendants and other Florida authorities to make specified changes in Florida voter registration procedures, and, more generally, to require defendants and others "to undertake immediate affirmative steps to come into compliance with all provisions of the NVRA, immediately." Complaint (document 6) at 28 ¶ C. Plaintiffs moved *ex parte* for a temporary restraining order blocking certification or other action to confirm the results of the 2000 presidential election until plaintiffs were allowed to vote. The motion was denied.

Plaintiffs then filed an amended class action complaint reiterating plaintiffs' claims under the NVRA and adding a count, presumably under 42 U.S.C. § 1983, alleging other constitutional and statutory violations. The amended complaint still sought the same relief as well as a $2,500 monetary award for each class member payable from the defendants in their individual capacities. Plaintiffs failed to file a timely motion for class certification, and the action proceeded solely as an individual action.

On April 30, 2001, Governor Bush filed a motion for summary judgment. On May 1, 2001, Ms. Harris and Mr. Roberts filed a motion for summary judgment. They as-

serted, among other things, that plaintiffs had failed to give defendants advance notice and an opportunity to cure as required by the NVRA as a condition precedent to the filing of a lawsuit. *See* 42 U.S.C. §§ 1973gg–9(b)(1) & (2).

On May 3, 2001, prior to any response by plaintiffs to the motions for summary judgment or any ruling thereon, plaintiffs filed a "Request for Court Approval of Settlement," with an attached Settlement Agreement signed by counsel for all parties. The Settlement Agreement required the Florida Department of State Division of Elections (which was under the supervision of Mr. Roberts and ultimately Ms. Harris) to provide certain information and training to other Florida public entities regarding the requirements of the NVRA. The Settlement Agreement noted that plaintiffs intended to seek an award of attorney's fees and costs and reserved to defendants the right to contest any such award. The Settlement Agreement included no admission of liability, required mutual releases of all claims, and called for dismissal with prejudice of all claims other than plaintiffs' claim for attorney's fees and costs.

By Order To Show Cause docketed May 7, 2001, I directed the parties to show cause why defendants' pending motions for summary judgment should not be denied as moot and to show cause why judgment should not be entered (1) requiring the parties to abide by the Settlement Agreement, (2) dismissing with prejudice all claims except plaintiffs' claims for attorney's fees and costs, and (3) reserving jurisdiction to enforce the judgment.

Inexplicably, plaintiffs responded to the Order To Show Cause by requesting further relief, over and above that called for by the Settlement Agreement, including appointment of the plaintiff association as the court's "monitor" to oversee compliance with the Settlement Agreement. Plaintiffs also sought to preserve their claim for monetary relief, asserting that that claim had not been relinquished, despite the clear language of the Settlement Agreement to the contrary.

Ms. Harris and Mr. Roberts responded to the Order To Show Cause by stating that their motion for summary judgment was indeed moot and that dismissal of the action was appropriate. They took no issue with the terms of the court's proposed judgment, as set forth in the Order To Show Cause. Governor Bush responded to the Order To Show Cause by stating that the court's proposed judgment "accurately reflects the parties' [Settlement] Agreement." (Document 108 at 2.)

By order entered May 30, 2001, over plaintiffs' objections but with the consent of (or at least without objection from) the defendants, I directed the clerk to enter judgment in precisely the form proposed in the Order To Show Cause. The order of May 30, 2001, stated:

    1. Defendants' motions for summary judgment (documents 90 and 95) are denied as moot.

    2. The clerk shall enter judgment providing as follows:

The parties shall abide by their settlement agreement. All claims are dismissed with prejudice except plaintiffs' claims for an award of attorney's fees and costs. The court reserves jurisdiction to enforce the order requiring the parties to abide by their settlement agreement and to consider an award of attorney's fees and costs.

    3. The clerk shall close the file.

Order of May 30, 2001 (document 106) at 3–4. The clerk entered judgment accordingly. (Document 107.)[1]

---

[1] I signed the Order to Show Cause on May 6, 2001, and the order directing the clerk to enter judgment on May 29, 2001; the latter

Plaintiffs now have filed a motion for attorney's fees and costs. In accordance with Local Rule 54.1, which bifurcates attorney's fee proceedings into the issues of liability and amount, plaintiffs' motion presents only the issue of liability for attorney's fees, not the issue of amount.

### Merits

■ In cases arising under the National Voter Registration Act, *see* 42 U.S.C. § 1973gg–9(c), as in cases arising under 42 U.S.C. § 1983 and certain other civil rights statutes, *see* 42 U.S.C. § 1988, the court "may" award the "prevailing party" a reasonable attorney's fee. Although these attorney's fee provisions speak in discretionary terms, a prevailing plaintiff ordinarily is entitled to an award of fees, unless special circumstances would render such an award unjust. *See, e.g., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Riddell v. National Democratic Party,* 624 F.2d 539, 543 (5th Cir.1980).

Whether plaintiffs are "prevailing parties" in the case at bar depends upon first, whether the parties' voluntary Settlement Agreement, coupled with the judgment requiring the parties to abide by the agreement and retaining jurisdiction to enforce the agreement, is sufficient to render plaintiffs prevailing parties, even though the court resolved no contested issue and made no ruling in plaintiffs' favor, and second, if so, whether the comparatively minor relief obtained by the plaintiffs through the Settlement Agreement is suf-

ficient to render them prevailing parties. Ms. Harris and Mr. Roberts also raise a third issue: whether fees should be denied because of plaintiffs' alleged failure to provide defendants with advance notice and an opportunity to cure as required by the NVRA as a condition precedent to the filing of a lawsuit to enforce the NVRA's provisions. This order addresses each of these issues in turn.

### I

■ The first issue is whether the Settlement Agreement, coupled with the judgment requiring the parties to abide by and retaining jurisdiction to enforce the Settlement Agreement, is sufficient to establish "prevailing party" status. The leading case on this issue is now *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Before addressing that decision, however, some background is in order.

Prior to *Buckhannon,* the law seemed clear that a plaintiff "prevailed" and thus could recover fees not only when the lawsuit was resolved by a contested ruling on the merits in plaintiff's favor, but also when the lawsuit was resolved by a consent decree or voluntary settlement agreement affording the plaintiff relief. Recovery of fees in connection with a consent decree or voluntary settlement appeared to be consistent with, or at least not inconsistent with, decisions of the Supreme Court[2] and the legislative history of "pre-

was actually docketed on May 30, 2001. Both of these orders were issued with full knowledge of, and in order to preserve jurisdiction to enforce the Settlement Agreement in accordance with, the Supreme Court's decision in *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). I issued the orders before learning of the Supreme Court's decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human*

*Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which was issued on May 29, 2001, ironically the very same day on which I signed to order for entry of judgment.

2. *See, e.g., Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ("[t]he fact that respondent prevailed through settlement rather than through litigation does not weaken her claim to fees").

vailing party" statutes.[3]

In addition, in some circuits, including the Eleventh, but not in others, a plaintiff "prevailed" and thus could recover fees if the plaintiff's lawsuit was the "catalyst" that caused a change in defendant's conduct, as had been sought in the lawsuit, even if there was no explicit settlement agreement. *Compare, e.g., Morris v. City of West Palm Beach*, 194 F.3d 1203, 1207 (11th Cir.1999) (accepting catalyst theory as basis for recovery of attorney's fees) *with S–1 v. State Bd. of Ed.*, 21 F.3d 49, 51 (4th Cir.1994) (rejecting catalyst theory). Consistently with its acceptance of the catalyst theory (and with the apparently uncontroversial availability of fees when relief was obtained by settlement), the Eleventh Circuit had said:

> a party may be considered to be "prevailing" if the litigation successfully terminates by a consent decree, an out-of-court settlement, a voluntary cessation of the unlawful practice by the defendant, or other mooting of the case where the plaintiff has vindicated his right.

*Doe v. Busbee*, 684 F.2d 1375, 1379 (11th Cir.1982).[4]

In *Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Supreme Court rejected the catalyst theory, thus resolving the split in the circuits. The Court said,

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by

the lawsuit, lacks the necessary judicial *imprimatur* on the change.

*Buckhannon*, 121 S.Ct. at 1840.

If the Court had said no more, *Buckhannon* would be irrelevant in the case at bar. Here, plaintiffs seek to recover not under the catalyst theory, but based on an explicit Settlement Agreement. But *Buckhannon* went beyond merely holding the catalyst theory invalid; the Court also suggested that a plaintiff who secures relief through settlement is sometimes a "prevailing party," sometimes not, depending on whether the plaintiff obtained a "consent decree," on the one hand, or merely a "private settlement," on the other. Thus the Court said:

> In addition to judgments on the merits, we have held that settlement agreements *enforced through a consent decree* may serve as the basis for an award of attorney's fees. See *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Although a consent decree does not always include an admission of liability by the defendant, see, e.g., *id.*, at 126, n. 8, 100 S.Ct. 2570, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citing *Hewitt* [*v. Helms*, 482 U.S. 755,] 760–761, [107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) ] and *Rhodes v. Stewart*, 488 U.S. 1, 3–4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (*per curiam* )). These decisions, taken together, establish that enforceable judgments on the merits and *court-*

---

3. *See, e.g.*, S.Rep. No. 94–011, at 5 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5912 ("parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief").

4. *See also Crowder v. Housing Authority*, 908 F.2d 843, 850 (11th Cir.1990) (holding that plaintiffs who obtained injunction through settlement agreement, without admission of liability by defendants or ruling on merits by court, were "prevailing parties" entitled to award of fees).

*ordered consent decrees* create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. . . .

*Buckhannon,* 121 S.Ct. at 1840 (emphasis added). Underscoring the significance of the references to "consent decrees" was a footnote that accompanied the text just quoted, in which the Court said:

> We have subsequently characterized the *Maher* opinion as also allowing for an award of attorney's fees for private settlements. See *Farrar v. Hobby,* [506 U.S. 103,] 111, [113 S.Ct. 566, 121 L.Ed.2d 494 (1992)]; *Hewitt v. Helms, supra,* at 760, 107 S.Ct. 2672. But this dicta ignores that *Maher* only "held that fees *may* be assessed . . . after a case has been settled by entry of a consent decree." *Evans v. Jeff D.,* 475 U.S. 717, 720, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). Private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal. See *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

*Buckhannon,* 121 S.Ct. at 1840 n. 7 (emphasis in original).

The Supreme Court's discussion of consent decrees and private settlements fell short of a *holding* that fees may be recovered only if there is a consent decree, not a mere private settlement. The issue in *Buckhannon,* after all, was whether fees could be recovered under the catalyst theory; any suggestion that fees may not be recovered for a mere private settlement was dictum. Moreover, the Court did not *explicitly* state, even in dictum, that fees may not be recovered when there is only a private settlement. Still, the discussion quoted above at least suggests that that is

now the law. I assume, for purposes of this opinion, that *Buckhannon* has changed the law (as it existed in this circuit), not just with respect to the catalyst theory, but also by drawing a dichotomy between "consent decrees," on the one hand, and "private settlements," on the other.

The question, then, is whether the case at bar falls on the "consent decree" side of the line, or on the "private settlement" side of the line. I conclude the case falls on the "consent decree" side of the line.

I reach this conclusion because, as a practical matter, there is no distinction between the judgment entered in this case and a consent decree, whereas there is a significant distinction between the judgment entered in this case and a mere private settlement. I address each of these assertions in turn.

First, a consent decree is an order of the court compelling the defendant to comply with specified terms, not because the court has independently concluded that the plaintiff is entitled to that relief, but because the defendant has voluntarily agreed to those terms. That is precisely what occurred in the case at bar. To be sure, the order and judgment that were entered were not entitled "consent decree," but they might as well have been; the title of the order and judgment made no difference. And the order and judgment that were entered did not set forth the terms to which the defendants had agreed, but they might as well have done so; the order and judgment in effect incorporated the terms of the Settlement Agreement by reference, with the very same force and effect as if the terms of the Settlement Agreement had been retyped as part of the order and judgment. The appropriateness of an award of fees surely ought not turn on whether the court does or does not retype

the provisions of a settlement agreement as part of an order compelling compliance.

Second, a private settlement, as that term is used in *Buckhannon,* does "not entail ... judicial approval and oversight" as involved in a consent decree. *Buckhannon,* 121 S.Ct. at 1840 n. 7. A "private settlement" as so defined is different from the order and judgment in the case at bar, which were entered after a determination by the court that an order requiring compliance with these specific terms appropriately could be entered, and which can (and if necessary will) be enforced by the court, in the same manner as any other injunction (or consent decree).[5] Moreover, as the Court noted in *Buckhannon,* 121 S.Ct. at 1840 n. 7, federal jurisdiction to enforce private contractual settlements often will be lacking, but in the case at bar such jurisdiction has been explicitly retained, thus affording federal jurisdiction to enforce the parties' Settlement Agreement, as incorporated by reference into the final judgment. In substance, if not in name, the order and judgment entered in the case at bar constitute a consent decree, not a mere private settlement.

It bears noting, also, that this conclusion is consistent with the controlling principle governing the result a plaintiff must obtain—even in a fully litigated case—to qualify as a prevailing party. The Supreme Court has said time and again that in order to qualify for an award of fees, a plaintiff must obtain a "change in the legal relationship between the plaintiff and the defendant." *Buckhannon,* 121 S.Ct. at 1840 (bracketing and citations to earlier authorities omitted); *see also Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Ruffin v. Great Dane Trailers,* 969 F.2d 989, 993 (11th Cir.1992). An order requiring a defendant to comply with an agreement—like an order compelling a defendant to do anything else of substance—constitutes a "change in the [parties'] legal relationship" within the meaning of this formulation.[6]

In sum, the parties' voluntary Settlement Agreement and resulting order and judgment requiring compliance with that Agreement have the same effect, for purposes of establishing prevailing party status, as would a litigated order imposing the same terms.

**II**

■ The next issue is whether the relief plaintiffs obtained was so insignificant that they should not be deemed prevailing parties. The governing test, as definitively set forth by the United States Supreme Court, is this:

> In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship

---

**5.** This analysis also draws support from Justice Scalia's concurrence in *Buckhannon,* where he apparently drew the line between "court-approved settlements and consent decrees," on the one hand, and private settlements not having that status, on the other:

> [I]n the case of court-approved settlements and consent decrees, even if there has been no judicial determination of the merits, the outcome is at least the product of, and bears the sanction of, judicial action *in the lawsuit.* There is at least *some* basis for saying that the party favored by the settlement or decree prevailed *in the suit.*

*Buckhannon,* 121 S.Ct. at 1847–48 (Scalia, J., concurring).

**6.** Although the "change in legal relationship" test was initially formulated for determination of the issue of whether the *substance* of the relief recovered by the plaintiff was sufficient to render the plaintiff a "prevailing party," the Court in *Buckhannon* cited the test as relevant to its determination of the sufficiency of the *method* by which the plaintiff obtained relief (that is, whether by ruling on the merits, consent decree or private settlement, or voluntary change of conduct). The test thus is relevant in the case at bar.

between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Prevailing party status "does not turn on the magnitude of the relief obtained." *Id.* at 114, 113 S.Ct. 566.[7]

In the case at bar, plaintiffs sought relief far beyond what they obtained. They named as defendants not only the two defendants with whom they have now settled, but also the Governor and various "John Does," against whom no relief has been obtained. They sought (but failed to obtain) relief of enormous import, including the blocking of certification of the 2000 presidential election results and the imposition of detailed and specific voter registration requirements. They also sought (but failed to obtain) additional relief, including class certification and an award of $2,500 per class member. The relief plaintiffs obtained in the Settlement Agreement, when compared to the relief sought in the original and amended complaints, was minor.

Nonetheless, the relief plaintiffs obtained was material in absolute terms, even if minor in comparison to the relief sought. Plaintiffs did seek, in their initial and amended complaints, an injunction requiring defendants to take "immediate affirmative steps to come into compliance with all provisions of the NVRA." Complaint (document 1) at 26 ¶ C; Amended Complaint (document 6) at 28 ¶ C. This prayer for relief was broad enough to encompass the relief that was obtained: a Settlement Agreement and resulting order and judgment requiring the Division of Elections to provide within one year information and training to a long list of state offices (including specified state university or college offices and state funded offices serving disabled persons) regarding their obligations under the NVRA, and allowing plaintiffs to have input regarding the content of the information and training.

This was "actual relief on the merits of [plaintiffs'] claim [that] materially alter[ed] the legal relationship between the parties by modifying the defendant[s'] behavior in a way that directly benefit[ted] the plaintiff[s]," *Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566, thus rendering plaintiffs "prevailing parties." Here, as in *Farrar,* "the prevailing party inquiry does not turn on the magnitude of the relief obtained," *id.* at 114, 113 S.Ct. 566; " 'the *degree* of [plaintiffs'] success' does not affect 'eligibility for a fee award.' " *Id.* at 114, 113 S.Ct. 566, *quoting Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (emphasis in original).

In sum, plaintiffs are "prevailing parties" as against defendants Harris and Roberts in their official capacities. They of course are not, however, prevailing parties as against Governor Bush or the "John Doe" defendants, or as against defendants Harris and Roberts in their individual capacities; plaintiffs obtained no relief against these defendants.

### III

Ms. Harris and Mr. Roberts nonetheless contend that plaintiffs cannot recover fees because they failed to provide defendants with notice and an opportunity to cure as required by the NVRA as a condition precedent to a lawsuit. Under

---

7. To be sure, "a technical victory may be so insignificant ... as to be insufficient to support prevailing party status." *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Almost by definition, however, a material alteration in the parties' legal relationship is not "so insignificant" as to fail this test.

the NVRA, a lawsuit by a private plaintiff is authorized only after "written notice of the violation to the chief election official of the State involved," 42 U.S.C. §§ 1973gg–9(b)(1) & (2), except with respect to violations occurring within 30 days before a federal election, 42 U.S.C. § 1973gg–9(b)(3). Plaintiffs assert they provided the required notice.

I conclude that plaintiffs are "prevailing parties" without regard to whether they provided notice as required. This is so because any failure to give notice as required would simply constitute a defense to plaintiffs' claim. For "prevailing party" purposes, this would be a defense like any other; by settling, defendants gave up the issue. Thus, just as plaintiffs were not required, after the settlement, to prove their assertion that defendants violated the NVRA, so also they were not required to overcome defendants' notice defense. In short, the parties' entire dispute was settled, with plaintiffs "prevailing" against defendants Harris and Roberts in their official capacities as set forth in sections I and II of this order.

## IV

A final note is in order. Because plaintiffs are, as set forth above, "prevailing parties" as against defendants Harris and Roberts, the procedures set forth in Local Rule 54.1(E) for the determination of the amount of any fee award will be invoked. Those procedures include submission by plaintiffs of their requested amount, supported by detailed attorney time records. In detailing their time, plaintiffs should take care accurately to identify any portion of their requested time that was devoted to pursuing defendants against whom they did not prevail, and any portion devoted to pursuing relief they did not obtain.

■ Although, as set forth above, the comparatively minor nature of the relief plaintiffs obtained does not affect their "prevailing party" status, the degree of success of course may affect the amount of any fee awarded. See, e.g., Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding that plaintiffs who recovered nominal damages were "prevailing parties" but that reasonable amount of fee was zero). Moreover, any failure by plaintiffs to give notice as required by the NVRA, although not affecting plaintiffs' "prevailing party" status, also may affect the amount of any fee award; relief that could as easily be obtained with a letter rarely will support a substantial fee award.

And finally, in determining the amount, if any, of fees to be awarded to plaintiffs for their time spent litigating the issue of attorney's fees, the reasonableness of their attorney's fee claim (and defendants' response) of course will be considered. Under Local Rule 54.1(E), plaintiffs will be required to identify the hours for which they seek compensation, and defendants will be required to indicate the amount they acknowledge as reasonable. This case presents a very real risk that resources devoted to litigation of the attorney's fee issue will quickly outstrip the actual contest on the merits. But any party that contributes to that result will do so at its peril; as the Supreme Court has said, the federal attorney's fee statutes were "never intended to 'produce windfalls to attorneys,'" Riverside v. Rivera, [477 U.S. 561,] 580, 106 S.Ct. [2686, 91 L.Ed.2d 466 (1986)] (plurality opinion) (quoting S.Rep. No. 94–1011, p. 6 (1976) U.S.Code Cong. & Admin. News 1976 pp. 5908, 5913), Farrar v. Hobby, 506 U.S. 103, 115, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). That admonition perhaps should be understood as applying to attorneys on both sides of the issue.

### Conclusion

Plaintiffs "prevailed" as against defendants Harris and Roberts in their official

capacities but not as against defendant Bush, the "John Doe" defendants, or defendants Harris and Roberts in their individual capacities. Accordingly,

IT IS ORDERED:

1. Pursuant to Local Rule 54.1(D), defendants Harris and Roberts in their official capacities are determined to be liable for an award of attorney's fees.

2. Proceedings to determine the amount of attorney's fees to be awarded shall proceed under Local Rule 54.1(E).

3. If any party seeks an evidentiary hearing on the amount of attorney's fees, the party shall file a separate request therefor on or before the deadline for filing of that party's affidavits under Local Rule 54.1(E). In the absence of such a request, the amount of fees will be determined based on the written record.