[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 01, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15366

_____

D. C. Docket No. 00-07281 CIV-WJZ

AMERICAN DISABILITY
ASSOCIATION, INC.,

Plaintiff-Appellant,

versus

ARIEL CHMIELARZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 1, 2002)**

Before ANDERSON, Chief Judge, DUBINA and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This appeal arises from a suit filed by appellant American Disability

Association ("Association") against Ariel Chmielarz under the Americans With

Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Prior to trial, the parties

entered a settlement, which was "approved, adopted and ratified" by the district court in a final order of dismissal, and over which the district court expressly retained jurisdiction to enforce its terms. Subsequently, the Association sought attorneys' fees and costs pursuant to Section 505 of the ADA, 42 U.S.C. § 12205. The district court determined that the Association was not a "prevailing party" as that term was defined in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), and therefore denied the motion. Because the district court's approval of the terms of the settlement coupled with its explicit retention of jurisdiction are the functional equivalent of a consent decree and, therefore, the settlement constitutes a "judicially sanctioned change in the legal relationship of the parties," the Association plainly is a "prevailing party" entitled to recover attorneys' fees under 42 U.S.C. § 12205. Accordingly, we reverse the district court's denial of fees and remand for a determination of the amount.

I.

On September 5, 2000, the Association sued Chmielarz in the United States District Court for the Southern District of Florida alleging that certain physical barriers at a gas station he owns in Ft. Lauderdale, Florida violated the ADA. Specifically, the complaint cited the following violations: (1) there were no

2

handicapped parking spaces at the gas station; (2) there was a 6-inch elevation change between the parking lot and sidewalk; (3) there was an elevation change along the route to the public bathroom; (4) the ramp to the public toilet exceeded the maximum allowable slope; (5) the store entry door was difficult to open; (6) the sales counter did not have the requisite portion 36 inches or lower in height; (7) there were no grab bars mounted in the bathroom; (8) the sink did not provide sufficient clearance for a wheelchair; (9) the faucets and paper towel dispenser were mounted above maximum height restrictions and were difficult to turn; and (10) the route to the toilet was too narrow. Chmielarz moved for summary judgment on the grounds that the Association lacked standing to pursue the action. The district court denied that motion and, by a separate order issued March 27, 2001, determined that the Association could assert organizational standing on behalf of its members. Two weeks after the second order was issued, the parties notified the court that they were in the process of negotiating a settlement.

The settlement stated that, in return for a dismissal of all claims against him, Chmielarz would make the modifications to his property necessary to bring it into compliance with the ADA. Specifically, Chmielarz agreed to remedy the problems identified by a building inspector, which included most of the defects specified in the Association's complaint. The settlement also stated that

[t]he parties have agreed that Plaintiff is entitled to reasonable attorney's fees and costs, but cannot agree upon amounts to which Plaintiff is entitled. It is agreed that the Plaintiff shall submit, through Motion, the issue of amounts of reasonable fees and costs to the Court for determination.

Once the settlement was finalized, the parties submitted to the court a "Stipulation of Voluntary Dismissal With Prejudice" in which they stipulated to the dismissal of the action and requested "the Court to retain jurisdiction to enforce the terms of the Stipulation for Settlement and to determine amounts of reasonable fees and costs to which [the Association] is entitled, which the parties agree will be disposed of by Motion." The district court then entered a Final Order of Dismissal in which it specifically "approved, adopted and ratified" the Stipulation of Voluntary Dismissal With Prejudice, dismissed the case with prejudice, and expressly "retain[ed] jurisdiction solely for the purpose of enforcing the Settlement Agreement."

The Association then filed a motion and supporting memorandum for fees and costs pursuant to the terms of the settlement agreement. It sought $17,192.65. The district court denied the motion on the grounds that the Association was not a "prevailing party" under the ADA. Specifically, the district court observed that, prior to Buckhannon, the Association could have obtained fees pursuant to the "catalyst theory," but that after Buckhannon, "a party is not a prevailing party for

4

purposes of the ADA unless they obtain either (1) a judgment on the merits or (2) a court ordered consent decree." Because, in its view, the Association had "acquired no such court ordered change in its legal relationship with" Chmielarz, the district court found that the Association was not entitled to recover fees or costs under the ADA.[1] This appeal followed.

## II.

Section 505 of the Americans with Disabilities Act provides that "[i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205. In this circuit prior to Buckhannon, a plaintiff could be a "prevailing party" pursuant to that provision even if the parties reached a private settlement or otherwise discontinued the litigation. Under the "catalyst theory,"

---

[1]The district court's order was entered on August 20, 2001. Because a final judgment had not been entered, the Association moved on September 6, 2001 to have the district court direct its clerk to enter judgment pursuant to Fed. R. Civ. P. 58. The district court granted that motion "out of an abundance of caution" on October 12, 2001. It does not appear, however, that the district court clerk entered the final judgment. Neither party has questioned our jurisdiction as result of this failure, and the Association filed its appeal in a timely manner. Because we have made it clear that "the lack of a Rule 58 separate judgment does not preclude our jurisdiction," Reynolds v. Golden Corral Corp., 213 F.3d 1344, 1345 (11th Cir. 2000), we do not address this issue.

plaintiffs could recover fees so long as they had "succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Morris v. City of West Palm Beach, 194 F.3d 1203, 1207 (11th Cir. 1999) (internal punctuation and citations omitted). In Buckhannon, however, the Supreme Court specifically invalidated the "catalyst theory," 532 U.S. at 605, 121 S. Ct. at 1840, and, in so doing, changed the landscape of the "prevailing party" inquiry.

The Court invalidated the "catalyst theory" because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Id. Instead, the Court said that a plaintiff could be a "prevailing party"only if it was "awarded some relief" by the court and achieved an "alteration in the legal relationship of the parties." Buckhannon, 532 U.S. at 603-605, 121 S. Ct. at 1839-40. The Court stated specifically that a plaintiff achieved such prevailing party status if it (1) received at least some relief -- including nominal damages -- on the merits, or (2) signed a settlement agreement "enforced through a consent decree." Id. at 603-04, 121 S. Ct. at 1840.

In saying that "a party is not a prevailing party for purposes of the ADA unless they obtain either (1) a judgment on the merits or (2) a court ordered consent decree," the district court interpreted Buckhannon to stand for the

6

proposition that a plaintiff could be a "prevailing party" only if it achieved one of those two results. That reading of Buckhannon, however, is overly narrow. Indeed, the Court did not say that those two resolutions are the only sufficient bases upon which a plaintiff can be found to be a prevailing party. See Smyth v. Rivero, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in Buckhannon was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly."); Nat'l Coalition for Students With Disabilities v. Bush, 173 F. Supp. 2d 1272, 1278 (N.D. Fla. 2001) ("The Supreme Court's discussion of consent decrees and private settlements fell short of a holding that fees may be recovered only if there is a consent decree, not a mere private settlement.") (emphasis in original). Rather, the Court used those examples to show that "the 'catalyst theory' falls on the other side of the line" from cases in which plaintiffs should be considered "prevailing parties." Buckhannon, 532 U.S. at 604-05, 121 S. Ct. at 1840. Indeed, while observing that either a judgment on the merits or a consent decree clearly are sufficient to make the plaintiff a "prevailing party," the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties." Id. at 605, 121 S. Ct. at 1840.

More specifically, the Court did not determine whether a plaintiff could achieve a sufficient "alteration in the legal relationship of the parties" through a settlement entered without a separate consent decree. In fact, private settlements were mentioned only in a footnote, which observed that

> [p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal.

Id. at 604 n.7, 121 S. Ct. at 1840 n.7 (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). [2]

When read together with Buckhannon, the case cited by the Court in its footnote regarding private settlements, Kokkonen, easily resolves this case. In

---

[2]Since Buckhannon, a circuit split has developed regarding whether a private settlement, without further judicial action, constitutes an "alteration in the legal relationship of the parties" sufficient to make the plaintiff a "prevailing party." Compare Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 & n.5 (9th Cir. 2002) (finding that, because the plaintiff could "enforce the terms of the settlement agreement against the [defendant]," he was a "prevailing party" regardless of the lack of a separate consent decree or specific retention of jurisdiction by the court), with N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Comm'n, 272 F.3d 154, 158-59 (2d Cir. 2001) (reversing a grant of fees where the parties entered a private settlement, and the district court simply entered an order dismissing the case as moot). We need not address that question today because, for the reasons we've explained at some length, the district court's explicit approval of the settlement and express retention of jurisdiction to enforce its terms, are the functional equivalent of a consent decree and, therefore, plainly separate this case from those in which a private settlement is unaccompanied by any further judicial action.

8

Kokkonen, prior to the close of trial, the parties agreed to a settlement and voluntary dismissal with prejudice. 511 U.S. at 376, 114 S. Ct. at 1674-75. The district court signed the dismissal but, notably, did not retain jurisdiction to enforce its terms or "so much as refer to the settlement agreement" in its order. Id. at 377, 114 S. Ct. at 1675. Shortly thereafter, the parties disagreed about their obligations under the agreement, and one side moved to have the district court enforce the settlement. On the basis of its "inherent power," the district court entered an "enforcement order." Id. In affirming the Ninth Circuit's reversal of that order, the Supreme Court held that there was no basis for a federal district court to assert jurisdiction over an alleged "breach of an agreement that produced the dismissal of an earlier federal suit." Id. at 379, 114 S. Ct. at 1676. Importantly, the Court observed that

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and . . . jurisdiction to enforce the agreement would therefore exist.

Id. at 381, 114 S. Ct. at 1677 (emphasis added).

Thus, it is clear that, even absent the entry of a formal consent decree, if the district court either incorporates the terms of a settlement into its final order of

9

dismissal or expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement. Its authority to do so clearly establishes a "judicially sanctioned change in the legal relationship of the parties," as required by Buckhannon, because the plaintiff thereafter may return to court to have the settlement enforced. A formal consent decree is unnecessary in these circumstances because the explicit retention of jurisdiction or the court's order specifically approving the terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent decree. See Smyth, 282 F.3d at 281 ("Where a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial over-sight (in the form of continuing jurisdiction to enforce the agreement) may be equally apparent."); Nat'l Coalition, 173 F. Supp. 2d at 1279 ("[T]he parties' voluntary Settlement Agreement and resulting order and judgment requiring compliance with that Agreement have the same effect, for purposes of establishing prevailing party status, as would a litigated order imposing the same terms." ).

In this case, the district court, in the order of dismissal, not only specifically "approved, adopted and ratified" the parties' settlement, but also expressly retained jurisdiction to enforce its terms. The formal entry of a consent decree was wholly

10

unnecessary and would not affect the status of the parties or the district court's power to enforce the terms of the settlement. Rather, by approving the settlement agreement and then expressly retaining jurisdiction to enforce its terms, the district court effected precisely the same result as would have been achieved pursuant to a consent decree.

Indeed, by entering the settlement, Chmielarz bound himself to provide: an accessible route from the sidewalk to his property, handicapped parking spaces, additional signage, ADA-compliant telephones, handicapped accessible restrooms, a ramp, ADA-compliant door hardware, an accessible service counter, and additional maneuvering space in the service area. Further, he agreed unambiguously to make those changes within six months of entering the settlement and to permit the Association to inspect the premises upon completing the work. Should he fail to meet those conditions, the district court, having expressly retained jurisdiction, could enforce the terms, even by use of its contempt power. See Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000) (explaining that injunctions, including consent decrees, are enforced through the trial court's civil contempt power). Thus, under Buckhannon, the Association has achieved an "alteration in the legal relationship of the parties" sufficient to render it a "prevailing party."

In short, we hold that the district court erred by refusing to award attorneys' fees and costs.  The settlement, expressly approved by the district court, constitutes a "judicially sanctioned change in the legal relationship of the parties," and therefore the Association is a "prevailing party" under the standards explained in Buckhannon.  Accordingly, the district court's order is reversed, and the case is remanded for a determination of the appropriate amount of fees to which the Association's counsel is entitled.

**REVERSED AND REMANDED.**