LEWIS, J.
This case is before the Court for review of the decision of the Fourth District Court of Appeal in Mady v. DaimlerChrysler Corp., 976 So.2d 1212 (Fla. 4th DCA 2008). The district court certified that its decision is in direct conflict with the decision of the Second District Court of Appeal in Dufresne v. DaimlerChrysler Corp., 975 So.2d 555 (Fla. 2d DCA 2008). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
BACKGROUND
In May 2003, Edmund Mady leased a 2003 Dodge Viper manufactured by DaimlerChrysler Corporation. See Mady, 976 So.2d at 1213. After experiencing problems with the vehicle and being unable to resolve the dispute with the manufacturer, Mady ultimately filed an action against DaimlerChrysler for breach of written warranty pursuant to the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301-2312 (2000) (MMWA). See 976 So.2d at 1213.
In November 2005, DaimlerChrysler served an offer of judgment, pursuant to *1131 section 768.79, Florida Statutes (2005), and Florida Rule of Civil Procedure 1.442. See 976 So.2d at 1213. In December 2005, DaimlerChrysler served a second offer of judgment along with a proposed release agreement. On December 29, 2005, the plaintiff accepted the later formal offer of judgment. See id.
Pursuant to the terms of the offer of judgment, DaimlerChrysler would pay the total sum of $8,500 exclusive of attorneys’ fees. See id. It neither admitted liability nor conceded plaintiff’s' entitlement to attorneys’ fees. See id. The agreement acknowledged that the plaintiff might seek attorneys’ fees. See id. The settlement required the plaintiff to execute a complete release and voluntary dismissal with prejudice. See id. at 1213-14.
In June 2006, the plaintiff moved for attorneys’ fees and costs. See id. at 1214. After a hearing, the trial court denied the motion, basing its denial on a finding that the plaintiff had not established he was a consumer who “finally prevailed]” under 15 U.S.C. § 2310(d)(2). See id.
The Fourth District affirmed the trial court, holding that “[tjhere simply was no court-ordered change in the relationship of the parties in this case by the plaintiffs acceptance of DaimlerChrysler’s proposal for settlement.” Id. at 1215. The Fourth District found “that section 768.79(4)’s provision for enforcement is not the same as the required affirmative court action that either approves of the terms of a settlement or affirmatively retains jurisdiction for enforcement.” Id.
In direct conflict, the Second District held in Dufresne that a settlement agreement entered into pursuant to section 768.79 entitles a consumer to attorneys’ fees under the MMWA. See 975 So.2d at 557. The Second District concluded that the agreement “is the functional equivalent of a consent decree and that Dufresne is not precluded from claiming entitlement to attorneys’ fees under the MMWA simply because he accepted the proposal for settlement.” Id. One month after Mady was issued, the Third District Court of Appeal in San Martin v. DaimlerChrysler Corp., 983 So.2d 620, 625 (Fla. 3d DCA 2008), rejected the Mady decision, aligned itself with the Second District, and employed reasoning similar to that of the Second District in Dufresne.
ANALYSIS'
A settlement produced pursuant to Florida’s offer of judgment statute, section 768.79, Florida Statutes (2005), and Florida Rule of Civil Procedure 1.442 is under the auspices of the court in which the dispute is being processed and is tantamount to a consent judgment. Florida’s offer of judgment statute provides:
An offer shall be accepted by filing a written acceptance with the court within 30 days after service. Upon filing of both the offer and acceptance, the court has full jurisdiction to enforce the settlement agreement.
§ 768.79(4), Fla. Stat. (emphasis supplied). A consumer who has exhausted all nonjudicial remedies as a condition required by the MMWA and later secures a favorable formal settlement offer of judgment from a defendant which is accepted in a Florida legal action filed under the MMWA, 15 U.S.C. § 2310, “finally prevails” and may be entitled to recover costs, expenses, and attorneys’ fees under the MMWA.
The MMWA was designed to “encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.” 15 U.S.C. § 2310(a)(1). To advance that goal, the MMWA requires warrantors to *1132 establish an “informal dispute settlement procedure” that adheres to minimum requirements prescribed by the Federal Trade Commission. See 15 U.S.C. § 2310(a)(2). Participation in these procedures is mandatory for consumers seeking relief under the MMWA, as the act states that consumers “may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to [the warrantor’s informal settlement procedure].” 15 U.S.C. § 2310(a)(3). It was the intent of Congress to provide consumers with an efficient and affordable mechanism to resolve warranty disputes that would not require consumers to incur substantial costs and expenses.
To ensure meritorious warranty claims are resolved in informal non-judicial proceedings, the MMWA provides protection to consumers with regard to warrantors who fail to resolve warranty claims that are later determined to be meritorious. Subsection (d)(1) of the MMWA provides:
Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
(A) in any court of competent jurisdiction in any State or the District of Columbia; or
(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.
(Emphasis supplied.) Reading subsection (d)(1) in unison with subsection (a)(3), it becomes apparent that an individual consumer can proceed with an MMWA action in court only after “he initially resorts to [the warrantor’s informal settlement procedure].” 15 U.S.C. § 2310(a)(3). To encourage warrantors to resolve disputes without the expense of judicial resources, subsection (d)(2) of the MMWA provides:
If a consumer finally prevails in any action brought [pursuant to this subsection], he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys’ fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys’ fees would be inappropriate.
15 U.S.C. § 2310(d)(2) (emphasis supplied).
Subsection (d)(2)’s fee-shifting provision is consistent with the MMWA’s overarching concern to provide consumer protection at the lowest cost possible. In enacting the MMWA, Congress designed a process intended to encourage warrantors to resolve claims quickly, efficiently, and informally without the necessity of forcing consumers to file legal actions. See 15 U.S.C. § 2310(a)(1). If a warrantor waits to resolve a meritorious claim until after the consumer is forced to involve the courts, the MMWA provides a remedy and method of shifting costs to the war-rantor which at times may be associated with a more extensive resolution process in our courts when the outcome acknowledges the validity of the warranty claim. See 15 U.S.C. § 2310(d)(2). The critical issue, therefore, is whether the resolution of a claim filed pursuant to subsection (d)(1) of the MMWA by a monetary settlement pursuant to an offer of judgment statute applicable to the proceeding bears the imprimatur of a court.
*1133 Unlike a settlement before an action is filed, any offer made and accepted pursuant to Florida’s offer of judgment statute is, as illustrated by the very name of the statute, under the auspices of the court in which the offer is made and accepted. A resolution reached pursuant to the offer of judgment statute, as opposed to an extrajudicial settlement agreement that is not subject to judicial enforcement, bears the imprimatur of the court because a party that fails to accept that resolution is subject to judicial penalty and sanctions. See § 768.79(4), Fla. Stat. Further, a settlement produced pursuant to Florida’s offer of judgment statute is subject to that court’s full continuing jurisdiction thereafter. The offer of judgment statute would actually provide a basis to further penalize the consumer if this were not the end result. Consequently, a settlement produced under Florida’s offer of judgment statute necessarily carries judicial implications.
Here, Mady’s action could be filed only after informal dispute settlement procedures failed to achieve a resolution. See 15 U.S.C. § 2310(a)(3). After fading to resolve the dispute, Mady, acting pursuant to subsection (d)(1) of the MMWA, was forced to file an action under the MMWA in state court. The statutory offer pursuant to the offer of judgment statute “neither admitted liability nor conceded plaintiffs entitlement to attorney’s fees, but specifically acknowledged that the plaintiff might seek attorney’s fees.” Mady v. DaimlerChrysler Corp., 976 So.2d 1212, 1213 (Fla. 4th DCA 2008).
Although the trial court may not have needed to actually enter a final judgment document, Mady áchieved the same result with a monetary settlement only after being forced to bear all of the costs and expenses associated with litigation and facing the statutory penalty if the offer of judgment had not been accepted. Daim-lerChrysler could have resolved this dispute during the “informal dispute settlement” phase, but instead waited until after Mady was forced to commence this action and incur the expenses of this litigation. Litigation had commenced, an offer was produced pursuant to the offer of judgment statute and corresponding rule of procedure, and the result necessarily falls under the auspices of a court, which is exactly the design of the MMWA. This interpretation is the only method through which subsection (d)(2) of that act is implemented to afford the designed remedy. Further, this Court has long and consistently held that when a defendant settles a disputed ease only after litigation has developed, the corresponding payment is tantamount to a final judgment when considering prevailing party type attorney fee assessments. See, e.g., Pepper’s Steel & Alloys, Inc. v. United States, 850 So.2d 462, 465 (Fla.2003); Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla.2000); Wollard v. Lloyd’s & Companies of Lloyd’s, 439 So.2d 217, 218 (Fla.1983). Accordingly, Mady should recover the costs, expenses, and attorneys’ fees as allowed by subsection (d)(2) of the MMWA because Daimler-Chrysler ultimately agreed to pay pursuant to a statutorily recognized offer of judgment after the commencement of litigation and also while the consumer faced monetary sanctions pursuant to the offer of judgment concept which could have penalized Mady if the offer had not been accepted.
This result is also consistent with federal authority. The United States Supreme Court has held that settlement agreements enforced through a consent decree may serve as a basis for an award of attorneys’ fees. See Maher v. Gagne, 448 U.S. 122, 129-30, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Although there is no actual con *1134 sent decree present here, the Eleventh Circuit Court of Appeals has stated:
[E]ven where there has been no formal entry of a consent decree following a settlement agreement, a district court may still award attorney’s fees to the prevailing party as long as: (1) it has incorporated the terms of the settlement into the final order of dismissal or (2) it has explicitly retained jurisdiction to enforce the terms of the settlement. American Disability Ass’n v. Chmielarz, 289 F.3d 1315, 1320 (11th Cir.2002). Under either option, the district court “clearly establishes ‘judicially sanctioned change in the legal relationship of the parties,’ as required by Buckhannon [Bd. & Care Home v. W. Va. Dep’t of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)], because the plaintiff thereafter may return to court to have the settlement enforced.” Id. A formal consent decree is unnecessary because the incorporation .of the settlement into a court order or the explicit retention of jurisdiction over the terms of the settlement are the “functional equivalent of an entry of a consent decree.” Id.
Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir.2003) (emphasis supplied). Florida’s offer of judgment statute explicitly states that “the court has full jurisdiction to enforce the settlement agreement.” § 768.79(4), Fla. Stat. The resolution under the offer of judgment statute and rule before us today is the “functional equivalent of a consent decree,” and under Smalbein, Mady is a prevailing party under subsection (d)(2) of the MMWA even if Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), is applied as argued by the dissent.
The dissent incorrectly relies on the United States Supreme Court’s decision in Buckhannon, which is completely distinguishable from the facts before us today. In Buckhannon, plaintiffs did not seek relief under the MMWA and instead pursued claims under the Fair. Housing Amendments Act of 1988 (FHAA) and the Americans with Disabilities Act of 1990(ADA). See 532 U.S. at 601, 121 S.Ct. 1835. Further, there was no resolution within the legal action such as the settlement here. In Buckhannon the case was terminated due to legislative action separate and apart from the legal action. The ultimate resolution was achieved absent any judicial involvement:
Respondents agreed to stay enforcement of the cease-and-desist orders pending resolution of the case and the parties began discovery. In 1998, the West Virginia Legislature enacted two bills eliminating the “self-preservation” requirement, see S. 627, I 1998 W. Va. Acts 983-986 (amending regulations); H.R. 4200, II 1998 W. Va. Acts 1198-1199 (amending statute), and respondents moved to dismiss the case as moot. The District Court granted the motion, finding that the 1998 legislation had eliminated the allegedly offensive provisions and that there was no indication that the West Virginia Legislature would repeal the amendments.
Id. In Buckhannon, the change in the legal relationship of the parties had nothing to do with the courts; it was a product of separate and independent legislative action. The Buckhannon Court reasoned that there was no “judicially sanctioned change.” Id. at 605, 121 S.Ct. 1835.
Here, unlike Buckhannon, the settlement agreement between the parties in litigation produced pursuant to an offer of judgment statute represents a “judicially sanctioned change.” A settlement made *1135 pursuant to Florida’s offer of judgment statute remains under that court’s full jurisdiction. See § 768.79(4), Fla. Stat. It thus becomes clear that there is direct judicial involvement in this case because the court in which the settlement agreement was produced retains jurisdiction over that agreement. Further, the dissent fails to provide any authority that applies Buckhannon to the MMWA or any other circumstances similar to the case before us. When other courts have extended Buckhannon beyond the scope of the FHAA and the ADA, they provided authority for doing so. See, e.g., El Paso Indep. Sch. Dist. v. Richard R., 591 F.3d 417, 422 n. 3 (5th Cir.2009). Accordingly, Buckhannon is completely distinguishable and has no bearing on this case.
Even if Buckhannon has some application, which it does not, Mady is still a “prevailing party” under the MMWA and the reasoning in Buckhannon does not alter this outcome. In that decision, the United States Supreme Court merely rejected the catalyst theory for legislative action as a legitimate justification for an award of attorneys’ fees pursuant to a fee-shifting statute. See Buckhannon, 532 U.S. at 605, 121 S.Ct. 1835. The Court stated:
A defendant’s voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term “prevailing party” authorizes an award of attorney’s fees without a corresponding alteration in the legal relationship of the parties.
Id. (emphasis supplied). Where, as here, a court retains jurisdiction to enforce an offer of judgment, the resulting settlement contains the requisite judicial imprimatur to classify a plaintiff as a prevailing party. See supra pp. 1133-34 (citing Smalbein, 353 F.3d 901). The dissent’s narrow reading of Buckhannon has been explicitly rejected by a number of the federal circuit courts of appeals, including the Eleventh Circuit. See, e.g., Perez v. Westchester Cnty. Dep’t. of Corrections, 587 F.3d 143, 150 (2nd Cir.2009) (“[Njothing in Buck-hannon or its sequelae-limits judicial imprimatur to [a judgment on the merits, a consent decree, or a judicially enforceable settlement agreement ]-”) (emphasis supplied); Mynard v. Office of Personnel Management, 348 Fed.Appx. 582, 586-87 (Fed.Cir.2009); Johnson v. City of Tulsa, 489 F.3d 1089, 1108 (10th Cir.2007) (“[W]e cannot accept the proposition that attorney fees for post-decree efforts are compensa-ble only if they result in a judicially sanctioned change in the parties’ legal relationship.”); Smalbein v. City of Daytona Beach, 353 F.3d 901, 905 (11th Cir.2003).
Without providing any authority to support its conclusion, the dissent asserts that “a judicially enforceable agreement is not equivalent to a judicially approved or sanctioned agreement.” Dissenting op. at 23-24. Through this claim, the dissent attempts to create a rule that provides that a court’s retention of jurisdiction over an agreement is insufficient to confer prevailing party status upon a party. None of the decisions relied on by the dissent, however, supports its bold assertion that judicial retention over an agreement is insufficient to confer prevailing party status to a plaintiff. In fact, all of the decisions relied on by the dissent to support its contention are materially distinguishable. In T.D. v. LaGrange School Dist. No. 102, 349 F.3d 469, 479 (7th Cir.2003), the Seventh Circuit expressly noted that “the district court has no continuing jurisdiction to enforce the agreement.” The court also noted that the agreement “was merely a private settlement agreement between the *1136 parties.” Id. at 479 (emphasis supplied). Similarly, in John T. v. Del. County Intermediate Unit, 318 F.3d 545 (3d Cir.2003), the two parties reached an agreement completely outside the confines of the judicial system. See 318 F.3d at 551. Not only did the parties in John T. reach an extrajudicial agreement, the trial court also granted the plaintiffs motion for voluntary dismissal, effectively discharging the matter from the jurisdiction of the court. See id. In Doe v. Boston Public Schools, 358 F.3d 20, 21-22 (1st Cir.2004), the agreement in question was also reached privately, and the only “litigation” at issue that took place before the agreement was reached was through an administrative hearing officer. Next, in New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi & Limousine Commission, 272 F.3d 154, 158-59 (2d Cir.2001), the district court dismissed the case as moot due to the parties entering into a private settlement. Finally, in Smyth ex rel. Smyth v. Rivero, 282 F.3d 268, 276-81 (4th Cir.2002), the Fourth Circuit merely held that a preliminary injunction did not make the beneficiaries of that injunction “prevailing parties” for purposes of the civil rights attorney fee statute, never addressing whether the retention of jurisdiction is sufficient. None of these cases involve an agreement made within the confines of the judicial system, let alone pursuant to an offer of judgment statute.
The only decision relied on by the dissent that does involve an offer of judgment statute actually undermines the dissent’s own argument. In Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative, Inc., 298 F.3d 1238, 1239 (11th Cir.2002), the plaintiff sought attorneys fees pursuant to the federal offer of judgment rule,[1] the Alabama Trade Secrets Act, and a contract entered into with the defendant. Although the United States Court of Appeals for the Eleventh Circuit awarded attorneys’ fees to the plaintiff pursuant to the terms of a contract, it discussed the federal offer of judgment statute and explicitly stated that the plaintiff would also be a prevailing party because of the offer of judgment statute. Id. at 1247:
Prior to Buckhannon, courts attempted to determine whether a party was a “prevailing party” for the purpose of recovering attorneys’ fees primarily by weighing the relief obtained against the relief sought. See, e.g., Fletcher v. City of Fort Wayne, 162 F.3d 975, 976 (7th Cir.1998).... In Buckhannon, however, the Supreme Court defined a prevailing party as “[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded.” 532 U.S. at 603, 121 S.Ct. 1835 (quoting Black’s Law Dictionary (7th ed. 1999)). In holding that a plaintiff was not entitled to an award of attorneys’ fees when the lawsuit' had been dismissed as moot, even though it appeared that the suit had induced the legislation that rendered the action moot, the Court explained that a “material alteration of the legal relationship of the parties” is necessary to permit the award. Id. at 604, 121 S.Ct. 1835 (quoting Texas State Teachers Ass’n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The Court gave two examples of judicial outcomes that satisfy this requirement: an enforceable judgment on the merits or a settlement agreement enforced through a court-ordered consent decree. Id. An enforceable judgment establishes a plaintiff as a prevailing party because the plaintiff has received at least some relief based upon *1137 the merits of a claim. Id. A consent decree also passes the test because “[a]l-though [it] does not always include an admission of liability by the defendant, ... it nonetheless is a court-ordered ‘change [in] the legal relationship between [the plaintiff] and the defendant.’ ” Id. (quoting Texas State Teachers at 792, 109 S.Ct. 1486).
Although Buckhannon does not specifically mention Rule 68 offers of judgment, we find its rationale equally applicable in the present context. Admittedly, an offer of judgment falls somewhere between a consent decree and the minimalist “catalyst theory” the Court rejected in Buckhannon. Unlike a consent decree, the court exercises little substantive review over a Rule 68 offer; upon notification that the plaintiff has accepted the offer, the court mechanically enters judgment. However, the court does ensure that the offer conforms with the Rule (it must include costs). More importantly, an accepted offer has the “necessary judicial imprimatur” of the court, Buckhannon at 605, 121 S.Ct. 1835 (emphasis in original), in the crucial sense that it is an enforceable judgment against the defendant. Thus, unlike a “defendant’s voluntary change in conduct” or a purely private settlement resulting in a dismissal, a Rule 68 judgment represents a “judicially sanctioned change in the relationship between the parties.” Id. Indeed, this Court recently held that a district court’s approval of a private settlement along with its explicit retention of jurisdiction to enforce the settlement terms, made the settlement the functional equivalent of a consent decree as described in Buckhannon,. and thus rendered the plaintiff a prevailing party under the ADA. See American Disability Ass’n, Inc. v. Chmielarz, 289 F.3d 1315 (2002).
Id. at 1248 (emphasis supplied) (parallel citations omitted).
CONCLUSION
We hold that a consumer who resolves a legal action with a warrantor pursuant to Florida’s offer of judgment statute constitutes a prevailing party under.the MMWA and may recover attorneys’ fees as allowed by that statute. Therefor we quash the decision on review and remand for further proceedings consistent with this opinion. We also approve the decisions of the Second District Court of Appeal in Dufresne and the Third District Court of Appeal in San Martin.
It is so ordered.
PARIENTE, QUINCE, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON and LABARGA, JJ., concur.

. Fed.R.Civ.P. 68.