Beihua SHENG, Appellee,

v.

STARKEY LABORATORIES, INC., Appellant.

No. 94-2537.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 17, 1995.

Decided April 21, 1995.

Janel E. LaBoda and Lauren Elizabeth Lonergan, Minneapolis, MN, for appellant.

Douglas A. Hedin, Daniel S. Goldberg and Andrea F. Rubenstein, Minneapolis, MN, for appellee.

Before BOWMAN, BEAM, and MURPHY, Circuit Judges.

BEAM, Circuit Judge.

This case began as a Title VII action but has mutated, through a series of unlikely coincidences, into a dispute over the existence and enforceability of an alleged settlement agreement. Believing a settlement had been reached, the district court dismissed the Title VII action without prejudice. The defendant, Starkey Laboratories, Inc. (Starkey Labs), then filed a motion claiming that settlement negotiations had not been completed and urging the district court to vacate its dismissal. The plaintiff, Beihua Sheng, filed a motion claiming that Starkey Labs had breached the agreement and urging the district court to enforce the settlement contract. The district court denied Starkey Labs's motion and granted Sheng's. Starkey Labs appeals. We reverse and remand.

## I. BACKGROUND

Sheng filed a lawsuit against her employer, Starkey Labs, alleging sexual harassment and retaliatory discharge. Starkey Labs filed a motion for summary judgment. While that motion was pending, the district court referred the parties to a magistrate judge for a settlement conference. Unaware that the settlement conference had not yet occurred, the district court granted summary judgment to Starkey Labs on Friday, December 17, 1993.

On Monday, December 20, 1993, at 9:00 a.m., without notice that the district court had issued a summary judgment, the parties began their settlement conference.[1] The magistrate judge placed the parties in separate rooms and began shuttling offers and counteroffers between them. Sheng eventually offered to settle for $73,500. After relaying that offer to Starkey Labs, the magistrate judge returned to the room in which Sheng and her attorney were waiting and said, "We have a settlement. Starkey [Labs] will pay $73,500." Sheng and her attorney followed the magistrate judge back to his chambers, where the attorneys shook hands.

In chambers, further negotiations ensued. Sheng's attorney asked Starkey Labs not to issue a 1099 form or a W–2 form, but Starkey Labs refused.[2] Starkey Labs's attorney asked Sheng to indemnify Starkey Labs for any taxes, interest, and penalties related to the tax treatment of the settlement, but Sheng refused.[3] The parties agreed to continue working on the settlement without the magistrate judge's assistance, and the settlement conference ended.

The attorneys left the settlement conference and returned to their respective offices. By that afternoon, the attorneys had each received copies of two orders issued by the district court. The first order, dated December 17, granted summary judgment to Starkey Labs. The second order, dated December 20, vacated the first. The following day, December 21, the district court entered a third order, which stated:

> The court having been advised by counsel[4] that the above action has been settled, **IT IS ORDERED** that this action is hereby dismissed, without prejudice, the court reserving jurisdiction for sixty (60) days to permit any party to move to reopen this action, for good cause shown.

This sequence of events led to a dispute as to whether the parties had entered into a binding settlement agreement.

---

1. For purposes of simplicity, our description of the settlement conference relies solely on an affidavit submitted by Sheng's attorney.

2. Sheng did not want taxes deducted from the settlement amount. Her attorney feared that if either of these forms were issued, the IRS might audit her and might conclude that the settlement amount was taxable.

3. Starkey Labs wanted to be sure that its total liability was limited to $73,500. It also appears that Starkey Labs believed it would be subject to penalties if the IRS audited the company and discovered the 1099 or W–2 forms had not been issued. According to Starkey Labs, Sheng refused any indemnification. Sheng, however, claims she only refused to indemnify Starkey Labs for penalties.

4. It is unclear from the record who actually contacted the court. Starkey Labs's counsel submitted an affidavit stating, "I did not at any time contact the Court to inform the Court that the matter was settled. Nor have I received copies of any communications by Plaintiff to the Court informing the Court that the parties have settled. I do not recall that Magistrate Judge Lebedoff told us that he was going to contact the Court to tell them that the matter was settled." Appellant's Appendix at 97.

The parties then filed competing motions. In support of its Rule 60(b) motion, Starkey Labs claimed that an agreement had never been reached and, alternatively, that any such agreement was unenforceable on the ground of mutual mistake. Essentially, Starkey Labs asked the district court to vacate the dismissal, vacate the vacation, and reinstate the summary judgment ruling. In support of her motion to enforce the settlement, Sheng claimed that a valid agreement had been reached. Accordingly, Sheng asked the district court to enter judgment in her favor for $73,500 and order any relief necessary to enforce the settlement agreement. The district court denied Starkey Labs's motion and granted Sheng's. Starkey Labs appeals the rulings on both motions.

## II. DISCUSSION

### A. Starkey Labs's Motion

■ Starkey Labs contends that the district court should have granted Starkey Labs's motion under Rule 60(b)(1), which provides for relief from a judgment or order based on "mistake."[5] We review a district court's ruling on a Rule 60(b) motion for abuse of discretion. *Tungseth v. Mutual of Omaha Ins. Co.*, 43 F.3d 406, 409 (8th Cir. 1994).

Starkey Labs argues that the district court entered judgment based on the mistaken belief that a settlement agreement had been reached. According to Starkey Labs, no agreement existed because certain material terms—the tax and indemnity issues—had not been resolved. The district court found that an IRS revenue ruling, which was issued the same day as the settlement conference and which held that settlement amounts are nontaxable, rendered the tax and indemnity issues immaterial. Accordingly, the court found that a valid agreement had been reached and concluded that its judgment of dismissal had not been based on a mistake.

■ Settlement agreements are governed by basic principles of contract law. *Devils Lake Sioux Tribe v. North Dakota*, 917 F.2d 1049, 1055 (8th Cir.1990); *accord St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn.App.1993). One such basic principle is that a contract is not formed unless the parties mutually assent to all material terms. *Ryan v. Ryan*, 292 Minn. 52, 193 N.W.2d 295, 297 (1971) (stating rule in context of a settlement agreement); *cf.* Restatement (Second) of Contracts § 33 cmt. c (1981) ("The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement."). When the existence of a contract depends on the materiality of certain terms, materiality must be determined as of the time the contract was allegedly formed. In other words, a term which is material during final negotiations cannot be retroactively "de-materialized" by a subsequent event.

■ For purposes of the present motion, the revenue ruling is just such a subsequent event. The settlement contract was formed, if at all, in the magistrate judge's chambers. At that time, neither party was aware that a relevant revenue ruling had been or would be issued the same day. Therefore, the revenue ruling does not affect the materiality of the tax and indemnity issues.

■ As a general rule, when the parties dispute the existence or terms of a settlement agreement, the parties must be allowed an evidentiary hearing. *TCBY Sys., Inc. v. EGB Assocs., Inc.*, 2 F.3d 288, 291 (8th Cir. 1993) (per curiam) (stating rule in the context of a motion to enforce a settlement agreement), *cert. denied*, —— U.S. ——, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994). Starkey Labs explicitly disputes the existence of a settlement agreement. Moreover, this dispute is highly relevant to the outcome of the Rule 60(b) motion.[6] Because the district court based its decision on the revenue ruling, it

---

5. Starkey Labs also argues that the district court should have granted its motion under Rule 60(b)(6), which provides for relief based on "any other reason justifying relief," because the settlement gives the plaintiff a windfall. This argument is without merit.

6. If the tax and indemnity issues were material, and if the parties did not mutually assent to any particular tax and indemnity terms, then no contract ever existed. If no contract existed, then the dismissal was based upon a mistake.

did not fully consider whether the disputed terms were material and whether a contract existed. Accordingly, we reverse the denial of Starkey Labs's Rule 60(b) motion and remand with directions to conduct an appropriate hearing.[7]

## B. Sheng's Motion

 Having concluded that the existence of a settlement agreement is in doubt, we must also reverse the district court's decision to enforce the agreement. We note, however, that even if a settlement agreement is found to exist, the district court may not have jurisdiction, under recent Supreme Court precedent, to enforce it.

In *Kokkonen v. Guardian Life Ins. Co.,* — U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court held that federal courts do not have the inherent power, after dismissing a case, to enforce the parties' settlement agreement. *Id.* at —— ——, 114 S.Ct. at 1676–77. The Court recognized that a settlement agreement may be made part of a dismissal order, either by a provision retaining jurisdiction over the settlement agreement or by incorporating the terms of the agreement into the order. *Id.* at —— – ——, 114 S.Ct. at 1677. "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.*

In the present action, the settlement agreement was not made a part of the dismissal order. The dismissal order states that the court is "reserving jurisdiction" to permit any party to reopen the action. Reopening a dismissed suit due to breach of a settlement agreement, however, is not the same as enforcing a settlement agreement. *Id.* at —— – ——, 114 S.Ct. at 1675–76. We find that the language in the dismissal order does not suffice to retain jurisdiction over the settlement agreement. Unless there is some independent basis for federal jurisdiction, Sheng must bring her enforcement action in the state courts.

## III. CONCLUSION

The order of the district court denying Starkey Labs's Rule 60(b) motion is reversed and the cause is remanded for an evidentiary hearing so that the district court can determine whether a settlement agreement exists. The order of the district court granting Sheng's motion to enforce the settlement is reversed.

---

7. In view of our holding, we need not address Starkey's alternative argument that, assuming an agreement exists, the judgment is founded on a mistake because in reaching a settlement the parties mistakenly believed that the court had not yet ruled on the summary judgment motion.