**Janice THOMPSON, Plaintiff,**

v.

**D.C. AMERICA, INC. and Barry Bell, Defendants.**

**Civ. A. No. 94–D–850–E.**

United States District Court, M.D. Alabama, Eastern Division.

July 31, 1996.

David L. Hirsch, Phenix City, AL, John S. Thrower, Jr., Opelika, AL, for plaintiff.

Stanley A. Martin, Opelika, AL, James W. Cameron; Joseph A. Kelly, Nashville, TN, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendants D.C. America, Inc. and Barry Bell's motion filed June 9, 1995, to dismiss with prejudice all claims asserted in the complaint. As a basis for dismissal, counsel for the defendants contends that he and the plaintiff's former attorney agreed that this action would be dismissed with prejudice in consideration of payment of $15,000 to the plaintiff by the defendants. The parties, however, disagree as to the scope of the settlement agreement. The court held an evidentiary hearing on July 5, 1995, to determine the scope and legality of the alleged settlement agreement. After careful consideration of the facts—as set forth in the pleadings, evidentiary submissions and parol testimony—the court issues the following memorandum opinion and order.

## PROCEDURAL HISTORY AND FACTS

On July 6, 1994, Plaintiff Janice Thompson commenced this action under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, seeking recovery under the theories of wrongful discharge and retaliation. The complaint also asserts supplemental state-law claims under Alabama law for the tort of outrage and trespass to the person. While several defendants were named in the complaint, the parties filed a joint motion on March 24, 1995, to dismiss all defendants except Barry Bell and to substitute D.C. America, Inc. as a defendant. The court granted this motion on March 29, 1995.

Subsequently, the court was advised that D.C.America, Inc. and the plaintiff had reached a settlement agreement in this lawsuit. Based upon this representation, the court ordered the parties to file a joint stipulation of dismissal on or before April 17, 1995. April 17, however, came and passed without the filing of a joint stipulation of dismissal. In a letter filed with the court on June 9, 1995, counsel for the defendants contended that, on April 3, 1995, he forwarded a settlement check for $15,000 to John Thrower ("Mr. Thrower"), former counsel for the plaintiff, in full settlement of the plaintiff's claims but that Mr. Thrower had not yet returned the settlement agreement signed by the plaintiff.[1]

In an affidavit, Joseph Allen Kelly (Mr. Kelly), defense attorney for D.C.America and Barry Bell, stated that, on April 3, 1995, Mr. Thrower rejected a $10,000 offer to settle this lawsuit but stated that he would recommend that the plaintiff accept a $15,000 settlement. Kelly's Aff. at ¶ 6. Mr. Kelly then received authority from the defendants to settle for $15,000. *Id.* Mr. Kelly thereafter drafted a written settlement agreement and order of dismissal. *Id.* On April 7, 1995,

---

1. The court construed this letter as a motion to dismiss with prejudice all claims asserted in the plaintiff's complaint. This motion is presently pending before the court.

Mr. Kelly sent via facsimile these two documents to Mr. Thrower. *Id.* at ¶ 7. On April 11, 1995, Mr. Kelly received the settlement check from D.C.America in the sum of $15,000, payable to both the plaintiff and Mr. Thrower. *Id.* at ¶ 8.

Either on April 11, 1995 or April 14, 1995, Mr. Kelly talked with Mr. Thrower and, according Mr. Kelly, Mr. Thrower approved in full the terms of the settlement agreement and proposed order of dismissal and stated that he had forwarded the settlement agreement to the plaintiff for her signature. *Id.* at ¶ 9. The settlement agreement contains a general release prohibiting the plaintiff from bringing a legal claim against D.C.America for any matter arising out her employment with D.C.America. On April 14, 1995, Mr. Kelly sent the settlement check to John Thrower to hold in escrow pending execution of the settlement documents. *Id.* at ¶ 9. However, despite several letters and telephone calls to Mr. Thrower and numerous promises by Mr. Thrower, Mr. Kelly never received the executed settlement agreement. Mr. Kelly subsequently learned, and thereafter confirmed with the State Bar of Alabama, that Mr. Thrower had been placed on interim suspension for an indefinite period of time effective May 23, 1995.[2] *Id.* at 13.

■ Based upon the representation of defense counsel that there was a dispute regarding the settlement agreement, the court held an evidentiary hearing on July 5, 1995, to determine the existence and/or scope of the settlement agreement.[3] At the hearing, the plaintiff was represented by her new attorney, Mr. David L. Hirsch of Columbus, Georgia. The plaintiff testified that, prior to Mr. Thrower's suspension, he was representing her in this lawsuit and also served as her

attorney in a state court lawsuit concerning a workers' compensation claim and retaliation claim. Both claims pending in the state lawsuit arise from the plaintiff's employment with D.C.America.

At the hearing, the plaintiff testified that Mr. Thrower contacted her and told her that it was essential that she settle this lawsuit but that they would still proceed with the workers' compensation and wrongful termination claims pending in the lawsuit in state court. The plaintiff testified that she agreed to accept $15,000 in settlement of her claims pending in this lawsuit. Subsequently, the plaintiff stated that, sometime in April of 1995, Mr. Thrower's secretary called her and told her that $15,000 had been delivered to the office.

When she arrived at Mr. Thrower's office, he was unavailable to meet with her. His secretary, however, gave her an envelope containing $9,000 in cash.[4] It is undisputed that the $15,000 check was received by Mr. Thrower and cashed. The plaintiff, however, stated that she never saw or signed a release, settlement agreement or any other such paper.[5] The plaintiff further stated that, after several unsuccessful attempts to meet with Mr. Thrower, she retrieved her file from him and employed a new attorney, Mr. Hirsch. On June 5, 1994, Mr. Hirsch contacted Mr. Kelly, attorney for D.C.America, Inc., and forwarded to him copies of the unsigned release and stipulation for dismissal that he had found in the file.

## DISCUSSION

■ The court has jurisdiction to determine the validity of a settlement agreement if, as here, the alleged settlement agreement arises from a lawsuit pending before the court. Because the court never entered an order dismissing this lawsuit, the court may now entertain the defendants' requests to enforce the settlement agreement and dismiss this lawsuit on the basis of said settle-

---

**2.** Mr. Thrower's suspension is unrelated to his representation of the plaintiff.

**3.** When material facts concerning the existence of an agreement to settle are in dispute, the court should hold a plenary hearing to determine the enforceability of the settlement rather than summarily enforce a settlement agreement. *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir.1975), *cert. denied*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976).

**4.** John Thrower kept $6,000 as his attorney fee.

**5.** At the hearing, the plaintiff's husband testified that the plaintiff never mentioned anything to him about a settlement agreement. He stated that, if there had been a settlement agreement or other similar documents, he felt certain that she would have shown them to him. He did, however, see the $9,000 and the envelope.

ment. *But see Kokkonen v. Guardian Life Ins. Co. Of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (holding that, after a case has been dismissed, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction or in the dismissal order, the court retained jurisdiction to enforce the settlement agreement).

Settlement agreements are governed by basic principles of contract law. *Sheng v. Starkey Laboratories, Inc.,* 53 F.3d 192, 194 (8th Cir.1995). It is undisputed that the plaintiff agreed to accept $15,000 in settlement for all claims pending in this lawsuit. The parties, however, hotly dispute whether the plaintiff's acceptance and retention of the $15,000 binds her to all the terms of the settlement agreement. If she is bound by all the terms of the settlement agreement, then the general release contained therein would appear to preclude her from maintaining her lawsuit against D.C.America in state court.

The court must decide two issues: First, whether Mr. Thrower, the plaintiff's former attorney, had authority to settle this case. If not, then the court must decide whether the plaintiff's retention of the settlement proceeds constitutes ratification of all the terms of the settlement agreement. The defendants assert that, in accepting the proceeds of the settlement check of $15,000, the plaintiff is bound by all the terms in the settlement agreement, which includes a release relinquishing her right to bring suit against D.C.America for any claim arising out of her employment with D.C.America. The defendants further assert that whether she authorized her attorney to enter into the settlement agreement is immaterial. That is, the defendants assert that her retention of the settlement proceeds after learning of the terms of the settlement agreement constitutes ratification of all the terms contained in the settlement agreement. The general rule is that "an attorney cannot settle a client's action or claim or prejudice a client's rights without authorization from the client." *Daniel v. Scott,* 455 So.2d 30, 32 (Ala.Civ.App. 1984). However,

> an agreement of compromise which is entered into by an attorney without authority from his client may become binding if it is ratified by the client. Where an attorney had no authority to settle but did so, the client may rescind it or he may ratify the settlement agreement. Ratification may be express, but its presence or absence is more usually implied from the circumstances of the particular case. "Silence and inaction on his [the client's] part after knowledge is a ratification as a matter of law. He cannot ratify in part; cannot hold the fruits of transaction and deny to the other the benefits accruing to him...." Slight evidence of acquiescence on a client's part may be deemed ratification of the acts of his attorney in making a compromise.

*Id.* at 33 (internal citations omitted).

As previously noted, the plaintiff testified that her intention in accepting the settlement proceeds was to settle the claims in this lawsuit only and that she never considered releasing D.C.America from potential liability regarding her lawsuit pending in state court. The court finds this testimony credible and, on the basis of this testimony, finds that the plaintiff did not originally authorize the settlement agreement. Nonetheless, the court finds that she now has ratified the settlement agreement and is bound by its terms. The plaintiff had knowledge of the terms of the settlement agreement no later than June 5, 1995, the date her new attorney sent via facsimile to counsel for the defendants a copy of the settlement agreement. The plaintiff, however, has kept the settlement proceeds for more than a year now.[6]

Under Alabama law, the court finds that the plaintiff has two options. She can ratify the settlement agreement, which contains a general release, and keep the settlement pro-

---

**6.** The court notes that enforcement of the settlement agreement would not leave the plaintiff without a remedy. Assuming that her allegations are true, she may possess a claim against Mr. Thrower and/or his insurance carrier and may be entitled to Alabama malpractice funds that serve as surety for malpractice claims. The court further notes that there are strong policy reasons for limiting the plaintiff to an action against her former attorney. *See Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986) ("If the lawyer's neglect protected the client from ill consequences, neglect would become all too common. It would be a free good—the neglect would protect the client, and because the client would not suffer the lawyer would not suffer either.")

ceeds as consideration for it, or she can rescind the settlement agreement and return the money. *Daniel,* 455 So.2d at 33. Neither at the hearing or at anytime thereafter, however, has the plaintiff indicated to the court that she would be willing to return the money. In fact, she testified at the hearing that she had spent the $9,000. The plaintiff cannot keep the money and at the same time reject the settlement agreement: "[O]ne cannot ratify in part; cannot hold the fruits of the transaction and deny to the other the benefits accruing him...." *Id.* Accordingly, the court finds that the plaintiff's continued retention of the settlement proceeds despite her full knowledge of the terms of the settlement agreement for more than a year constitutes acquiescence to the terms thereof. *See Daniel,* 455 So.2d at 33 (noting that retention of settlement proceeds by plaintiff for more than fifty days constitutes ratification). Because the plaintiff apparently has no intention of returning the money, the court finds that she is bound by the settlement agreement.

Accordingly, it is CONSIDERED and ORDERED that the plaintiff is BOUND by the terms of the settlement agreement and that the defendants' motion to dismiss this action with prejudice be and the same is hereby GRANTED.

The Clerk of the Court is further DIRECTED to close this case.