# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3698

_____

Christina A., by and through her      *
Parent and Next Friend, Jennifer A.;   *
Patricia B., by and through her Next   *
Friend, Hillary B.; Philip C., by and   *
through his Parent and Next Friend,    *
Robert C.; Shannan D., by and through   *
her Parent and Next Friend, Melissa D.;   *
Todd E., by and through his Parent and   *
Next Friend, Sandra E.; Carl F., by and   *
through his Next Friend, Hillary B.,    *
   *
       Appellees,        *
   *   Appeal from the United States
     v.          *   District Court for the
   *   District of South Dakota.
Jeff Bloomberg, in his official capacity   *
as Secretary of the South Dakota     *
Department of Corrections; Owen     *
Spurrell, in his official capacity as    *
Superintendent of the State Training    *
School at Plankinton, South Dakota,    *
   *
       Appellants.      *

_____

Submitted: October 11, 2002

Filed:  January 13, 2003

_____

Before LOKEN, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Juvenile inmates at the South Dakota State Training School at Plankinton sued as a class to improve conditions at the facility. The inmate class claimed that actions of the school deprived them of their constitutional rights under both the First and Fourteenth Amendments to the Constitution and that the procedures used violated the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1487. At issue, among other things, were (1) the restraint methods used by the institution's employees, (2) the lengthy confinements to which inmates were subjected, (3) the provision (or lack thereof) of mental health services, (4) the training of staff, (5) the "arbitrary" method of discipline and punishment, (6) the presence of male staff members in the female shower area, (7) the monitoring of telephone calls and visits, and (8) the lack of special education courses for inmates who need additional educational assistance.

The parties notified the court that they were conducting settlement negotiations and later presented a settlement agreement for approval. Christina A. v. Bloomberg, No. 00-4036, slip op. at 2 (D.S.D. Dec. 13, 2000). After conducting a "fairness hearing" pursuant to Federal Rule of Civil Procedure 23(e), id., the court approved the settlement agreement and dismissed the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), retaining jurisdiction for the "purpose of enforcing the Settlement Agreement." Id. at 8. Although the court explicitly determined that the agreement was "fair, reasonable, and adequate," it incorporated none of the specific terms and conditions agreed upon by the parties in its opinion and order. Id.

The class then sought an award of attorney's fees and expenses, and the district court granted this request. The court held that the Prison Litigation Reform Act ("PLRA") did not limit the amount of attorney's fees the class could receive and that the class was entitled to a fully compensatory fee and expense award because the

settlement agreement had a positive impact on conditions at the facility, making the class a prevailing party. The class was awarded $302,617.50 in attorney's fees and $74,019.98 in costs and expenses, after the district court made appropriate reductions in the fee award.[1] The Secretary of the South Dakota Department of Corrections and the Superintendent of the State Training School appeal the district court's award of fees and costs and expenses. For the reasons stated below, we reverse.

## I.    DISCUSSION

### A.    Prevailing Party Status

"[W]e review de novo the legal question of whether a litigant is a prevailing party." Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997). Section 1988(b) of Title 42 of the United States Code allows the court to award reasonable attorney's fees to the "prevailing party." In this case, the issue of whether or not the inmate class is a prevailing party entitled to receive fees centers around a recent Supreme Court decision, Buckhannon Board & Care Home, Inc., v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001). In Buckhannon, the Court held that the "catalyst theory" of prevailing party[2] status is no longer valid. Under the "catalyst theory," a party prevails if the lawsuit brought forth "voluntary change" by the defendant. 532 U.S. at 601. The "catalyst theory" is inappropriate for the award of attorney's fees because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Id. at 605. The Court determined that

---

[1]The district court reduced attorney's fees for duplicative representation of the class at depositions and interviews, but the court did not make similar reductions in costs and expenses for duplicative travel.

[2]"We agree with our sister circuits that *Buckhannon* applies broadly to fee-shifting statutes that employ the 'prevailing party' language." Cody v. Hillard, 304 F.3d 767, 773 n.3 (8th Cir. 2002).

a legal change, rather than a voluntary change, in the relationship of the parties is required. Id. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." Id.

The Supreme Court specified that a judgment on the merits or a "settlement agreement[] enforced through a consent decree" is sufficient to meet this standard. Id. at 604. In the present case, the debate is over the status of the settlement agreement and the court's role in enforcing it. The Court in Buckhannon stated that "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." Id. at 604 n.7. If the agreement between the inmate class and the institution is a private settlement, then it is clear from Buckhannon that the inmate class is not a "prevailing party" entitled to attorney's fees under 42 U.S.C. § 1988.

We begin with an analysis of the district court's actions by way of ratification of the settlement agreement. Rule 23(e) of the Federal Rules of Civil Procedure states that "[a] class action shall not be dismissed or compromised without the approval of the court." Fed. R. Civ. P. 23(e). "In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'" Van Horn v. Trickey, 840 F.2d 604, 606 (8th Cir. 1988) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975)). The district court's review of the settlement agreement in this case essentially determined whether it was "fair, reasonable, and adequate" and was merely an exercise in compliance with Rule 23(e). This review fails to impose the necessary "*imprimatur*" on the agreement.

> A class action settlement, like an agreement resolving any other legal claim, is a *private* contract negotiated between the parties. Nevertheless, Rule 23(e) requires the court to intrude on that private consensual agreement to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.

5 <u>Moore's Federal Practice</u> § 23.82[1] (3d ed. 2000) (emphasis added). Although Rule 23(e) requires the district court to approve the class action agreement, it does not require the court to establish the *terms* of the agreement. Therefore, the district court's approval of the settlement agreement does not, by itself, create a consent decree, and the inmate class did not become a prevailing party under <u>Buckhannon</u> by this action of the trial court.

The appellants concede that the settlement agreement in this case is "something more" than a private settlement agreement because the district court retained jurisdiction to enforce it. However, the district court's enforcement jurisdiction alone is not enough to establish a judicial "*imprimatur*" on the settlement contract. The district court indicated that, although the settlement agreement was not a formal consent decree, "to read *Buckhannon* to require one particular form for resolving a dispute in order to become a prevailing party is to read the opinion too narrowly." <u>Christina A. v. Bloomberg</u>, 167 F. Supp. 2d 1094, 1098 (D.S.D. 2001). The court went on to say that the settlement agreement served essentially the same purpose as a formal consent decree since it changed the legal relationship between the parties by requiring the appellants to make specific improvements to the training school and by allowing the appellees to enforce the agreement in court. <u>Id.</u> at 1099.[3] We disagree with this conclusion.

<u>Buckhannon</u>, as indicated, makes it clear that a party prevails only if it receives either an enforceable judgment on the merits or a consent decree.[4] <u>Buckhannon</u>, 532

---

[3]We do not read the district court's opinion as holding that an agreement that falls short of the essential requirements of a consent decree is sufficient. We believe that the court finds that the approved agreement is, indeed, some form of consent decree.

[4]A consent decree is defined as "[a] *court decree* that all parties agree to." Black's Law Dictionary 419 (7th ed. 1999) (emphasis added).

U.S. at 604. A private settlement agreement is not enough.[5] While a judge has the authority to enforce the terms of a consent decree, "noncompliance with a consent decree is enforceable by citation for contempt of court." Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 518 (1986).[6] This court has held that consent decrees are distinguishable from private settlements by the means of enforcement. "[C]onsent decrees . . . are enforceable through the supervising court's exercise of its contempt powers, and private settlements [are] enforceable only through a new action for breach of contract." Hazen ex rel. LeGear v. Reagen, 208 F.3d 697, 699 (8th Cir. 2000) (citing Benjamin v. Jacobson, 172 F.3d 144, 157 (2d Cir. 1999)). We are convinced that the court's dismissal order of December 13, 2000, would not support a citation for contempt. As earlier noted, no specifically enumerated contract terms were incorporated into the court's order. We think that either party, if aggrieved, could institute a breach of contract action and, perhaps, in the district court assuming, without deciding, the continuation of federal court jurisdiction for such a case. "A voluntary dismissal without prejudice under Rule 41(a)(2) [as here] renders the proceedings a nullity and leaves the parties as if the action had never been brought." 8 Moore's Federal Practice § 41.40[9][b] (3d ed. 1997). So, it is possible that the class could seek reinstatement of the dismissed action under the district court's retained enforcement jurisdiction. But, the availability of either of these potential non-contempt remedies fails to support the conclusion that the settlement agreement serves essentially as a consent decree. See 18 U.S.C. § 3626(g)(6); Kokkonen v. Guardian Life Ins., 511 U.S. 375, 381 (1994).

---

[5]The PLRA defines a "private settlement" as "an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(g)(6). In this case, the district court purported to retain jurisdiction over the agreement in order to enforce its provisions against the appellants.

[6]"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966).

## B.    Prison Litigation Reform Act

"Abuse of discretion governs review of fee awards, however, questions of law are reviewed de novo." Lane v. United States Dep't of Agric., 294 F.3d 1001, 1003 (8th Cir. 2002) (citing Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997)). Since our examination of the applicability of the PLRA is a question of law, we hold that the fee-limiting provisions of the Act apply in this case. This statute, codified in part at 42 U.S.C. § 1997e(d), places limits on the amount of attorney's fees that a court may award a plaintiff prisoner. The provision at issue states the following:

> [i]n any action brought by a prisoner who is confined to *any jail, prison, or other correctional facility*, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that . . . the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title.

42 U.S.C. § 1997e(d)(1)(A) (emphasis added).

The district court held that the State Training School did not fall within the definition of a "jail, prison, or other correctional facility" even though the juvenile inmate class members fall within the definition of "prisoner" in this provision. Christina A., 167 F. Supp. 2d at 1099. In reaching this determination, the court found that the definition of "institution" found in 42 U.S.C. § 1997, a section that applies to section 1997e and pre-dates the PLRA, was the appropriate definition to consider. Id. Section 1997 defines an "institution" to include "a jail, prison, or other correctional facility" and a facility for juveniles "adjudicated delinquent" or "in need of supervision." 42 U.S.C. § 1997(1)(B)(ii), (iv)(III). The district court reasoned that Congress must have intended section 1997e to apply only to adult facilities because section 1997 explicitly refers to juvenile facilities and section 1997e does not. Christina A., 167 F. Supp. 2d at 1099. We disagree. The statutory construction used

by the district court fails to take into account the plain language of the statute. "Although Congress did not define the phrase 'jail, prison, or other correctional facility' . . . the plain meaning of the phrase undoubtedly encompasses juvenile detention facilities." Alexander S. v. Boyd, 113 F.3d 1373, 1383 (4th Cir. 1997).

Section 3626(g)(5) of Title 18 of the United States Code, another provision of the PLRA, explicitly defines a "prison" as a "facility that incarcerates or detains juveniles or adults." Under this definition of a "prison," the fee-limiting provision found in 42 U.S.C. § 1997e(d)(1) would clearly encompass the State Training School. In Alexander S., a case with facts similar to the present case, the Fourth Circuit determined that the definition of "jail, prison, or other correctional facility" covered the juvenile facility at issue in that case. 113 F.3d at 1383-84. The court stated that since 18 U.S.C. § 3626(g)(5) and 42 U.S.C. § 1997e(d)(1) were enacted at the same time as part of the PLRA, the definitions of "prison" are the same, based on the "cardinal rule of statutory construction . . . that statutes which are originally part of the same Act should be construed together." Id. Therefore, "jail, prison, or other correctional facility" in 42 U.S.C. § 1997e(d)(1) encompasses juvenile facilities since 18 U.S.C. § 3626(g)(5) defines prisons to include juvenile facilities. Id. at 1384.

The district court rejected this reasoning because the sections of the PLRA were codified in various sections of the United States Code. "The problem with the panel opinion in Alexander S. is its failure to take into account the structure of the PLRA. This structure makes it unsafe to assume that a term defined in one section of the PLRA necessarily has the same definition in another." Christina A., 167 F. Supp. 2d at 1100. We find this reasoning unpersuasive, and we agree with the Fourth Circuit that juvenile facilities are covered by the fee-limiting provisions of the PLRA.

Because we have concluded that the juvenile inmate class is not entitled to attorney's fees, we need not address whether the class was entitled to a fully

compensatory award or whether the district court erred in not reducing the costs and expenses awarded for duplicative travel by class counsel.

## II.    CONCLUSION

We reverse the district court's award of attorney's fees and costs and expenses, and we remand for entry of judgment consistent with this opinion.

MELLOY, Dissenting

I concur that the state training school qualifies as a correctional facility under the Prison Litigation Reform Act.  However, I dissent from that portion of the majority's opinion which holds the plaintiff class is not a prevailing party.  District court approval of a settlement agreement and dismissal with explicit retention of jurisdiction for the purpose of enforcing the agreement serve as the functional equivalent of a consent decree.  Accordingly, I would hold the plaintiff class to be a prevailing party under the standard set forth Buckhannon Bd. & Care Home, Inc., v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-05 (2001).  This conclusion is based, in part, on an underlying determination that the district court enjoys explicitly retained enforcement jurisdiction under the standard set forth in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379 (1994), and that this jurisdiction enables the district court to issue enforcement orders regarding the settlement agreement.  See Gilbert v. Monsanto, 216 F.3d 695, 699-700 (8th Cir. 2000) (affirming a district court's ability to expressly retain jurisdiction and order the enforcement of a settlement agreement).

The majority reaches the opposite conclusion for two reasons.  First, the majority adopts a reading of Buckhannon that emphasizes the Court's use of the term consent decree and minimizes reliance on the Court's generally stated concerns of judicial approval, oversight, and enforcement jurisdiction.  Second, the majority fails

to acknowledge that <u>Kokkonen</u> expressly sanctioned the use of district court orders as vehicles to enforce settlement agreements in cases where the district courts explicitly retain jurisdiction to enforce the settlement agreements. I address these issues in turn.

I

In <u>Buckhannon</u>, the Court rejected the catalyst theory of prevailing party status and held that for there to be a prevailing party, there must be a "'material alteration of the legal relationship of the parties.'" <u>Buckhannon</u>, 532 U.S. at 604-05 (citing <u>Texas St. Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792-93 (1989)). The Court further stated that this material alteration of the legal relationship must carry a judicial imprimatur or judicial sanction. <u>Id.</u> at 605 ("We think, however, the "catalyst theory" falls on the other side of the line from these examples. It allows an award where there is no judicially sanctioned change in the legal relationship of the parties.").

As examples of the type of action that would convey the necessary judicial imprimatur or sanction, the Court referred to settlement agreements enforced through consent decrees and judgments on the merits. <u>Id.</u> at 604. As examples of the type of actions that would not convey the necessary imprimatur, the Court referred to non-final victories such as surviving a motion to dismiss for lack of jurisdiction or for failure to state a claim upon which relief could be granted or receiving an interlocutory ruling that reverses a dismissal for failure to state a claim. <u>Id.</u> at 604-05 (citing <u>Hewitt v. Helms</u>, 482 U.S. 755, 760 (1987) and <u>Hanrahan v. Hampton</u>, 446 U.S. 754, 760 (1980) (*per curiam*)). The Court rejected the argument that prevailing party status could exist where the successful result was obtained through a private settlement agreement. <u>Id.</u> at 604 and n.7.

-10-

The facts of <u>Buckhannon</u> provide the clearest example of the absence of a judicial imprimatur.  In <u>Buckhannon</u>, legislative action provided the plaintiff its desired relief and mooted the underlying legal claims.  <u>Buckhannon</u>, 532 U.S. at 601.  Accordingly, the Court faced a simple dismissal based on mootness following wholly non-judicial relief.  The Court did not face a purely private settlement agreement, a settlement agreement with retained enforcement jurisdiction, or a consent decree.

The Court in <u>Buckhannon</u> did not limit the availability of prevailing party status to only those cases resolved through a consent decree or final judgment on the merits.  <u>Id.</u> at 604-05.  Rather, the Court set forth criteria to guide the analysis of whether there is a judicially sanctioned, material change in the legal relationship of the parties.  <u>Id.</u>  As noted above, one of these issues is finality – success on an interlocutory order or survival following a motion to dismiss are insufficient.  The Court also emphasized judicial approval, judicial oversight, and enforcement jurisdiction.  <u>Id.</u> at n. 7.  In distinguishing a judicially sanctioned change from a change that is reflected merely in a private settlement agreement, the Court stated:

> Private settlements do not entail the judicial approval *and oversight* involved in consent decrees.  And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal.

<u>Id.</u> (citing <u>Kokkonen</u>, 511 U.S. at 379) (emphasis added).

Importantly, the present case does not involve a mere private settlement agreement.  Rather, it involves a settlement agreement with equitable remedies regarding confinement conditions and treatment options at the training school.  The district court approved this settlement agreement after a fairness hearing and

explicitly retained jurisdiction to enforce the settlement agreement.[7] This retention of enforcement jurisdiction, if properly within the district court's power, guarantees the judicial oversight required by <u>Buckhannon</u>. As explained below, the retention of enforcement jurisdiction was within the district court's power. Accordingly, the required finality, approval, oversight and jurisdiction *are* present, and I find no material basis upon which to distinguish the present case from the situation we would face if the district court had elected to use the words "consent decree" to achieve the identical result.

II

In denying prevailing party status, the majority distinguishes settlement agreements from consent decrees. Critical to the majority's analysis is the conclusion that the district court is powerless to enforce a settlement agreement via an enforcement order and that the only potential remedies are an action for breach of contract or reinstatement of the original suit. In so concluding, the majority underestimates the enforcement authority of the district court that accompanies the express retention of jurisdiction.

In <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 381 (1994), the Court held *only* that a district court lacked *inherent* authority to issue an order to enforce a private settlement agreement. The Court stated:

---

[7]The settlement agreement provides that its terms would be incorporated into the court's order approving the settlement agreement, a breach of the settlement agreement would be a violation of the order of dismissal, and the court would have ancillary jurisdiction to enforce the settlement agreement. <u>See</u> Addendum to Appellant's Brief at 26-27. The order approving the settlement agreement did not explicitly incorporate the agreement into the order of dismissal but did approve the entire settlement agreement.

The situation would have been quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (*such as a provision "retaining jurisdiction" over the settlement agreement*) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the order would therefore exist.

Id. (emphasis added). The Court emphasized that the district court had not retained authority over the agreement, "[t]he Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement." Kokkonen, 511 U.S. at 377. Accordingly, Kokkonen should not be read as a broad prohibition against a district court's retention of jurisdiction to enforce a settlement agreement via court order. Rather, Kokkonen should be limited to its holding – district courts lack *inherent* authority to enforce settlement agreements where there is no incorporation of the agreement in the order of dismissal or retention of enforcement jurisdiction.

Citing Kokkonen, the Eighth Circuit has repeatedly recognized the possibility of federal enforcement jurisdiction over a settlement agreement where the district court approves, and expressly retains jurisdiction to enforce, the agreement. See, e.g., Hayden Assoc., Inc., v. ATY Bldg Sys., Inc., 289 F.3d 530, 532-33 (8th Cir. 2002) (citing Kokkonen for the proposition that a settlement agreement may be made part of a district court's order of dismissal by a provision retaining jurisdiction over a settlement agreement, but holding specifically that the district court was without jurisdiction because it had not explicitly retained jurisdiction over a financing agreement that was ancillary to the settlement agreement); Sheng v. Starkey Labs, Inc., 53 F.3d 192, 193 (8th Cir. 1995) (citing Kokkonen, but holding that a district court's reservation of jurisdiction for "sixty (60) days to permit any party to move to reopen th[e] action, for good cause shown" did not satisfy the general retention of enforcement jurisdiction requirement set forth in Kokkonen); Miener v. Missouri

-13-

Dept. of Mental Health, 62 F.3d 1126, 1127 (8th Cir. 1995) (citing Kokkonen, but finding no federal enforcement jurisdiction because "[t]he settlement agreement did not designate any court as having jurisdiction of future enforcement proceedings.").

In at least one instance, the Eighth Circuit relied on the retained jurisdiction prong of Kokkonen to affirm a district court order enforcing a court-approved settlement agreement. Gilbert v. Monsanto, 216 F.3d 695, 699-700 (8th Cir. 2000). In Gilbert, the parties reached a settlement agreement and stipulated, "[t]he 'confidential Settlement Agreement and Release' executed between the parties is herein incorporated by reference. Furthermore, it is stipulated that the parties agree that this Court shall retain jurisdiction to enforce the terms of the Settlement Agreement and Release." Id. at 699. The district court in Gilbert then dismissed the case with prejudice subject to an express retention of jurisdiction to enforce the agreement. Upon the plaintiff's subsequent motion to enforce the agreement, the district court learned that the defendant failed to sign the referenced agreement. Nevertheless, the district court determined that the parties had reached an oral settlement agreement and that, under the terms of the stipulation, there was retained jurisdiction to enforce the oral agreement. On appeal this court affirmed the district court's enforcement order and stated, "We hold on the record before us that the district court did not clearly err . . . in concluding that it retained jurisdiction over the enforcement of the settlement agreement, *regardless of its form.*" Id. at 700 (emphasis added).

In the present case, as in Gilbert, the settlement agreement was not merely a private settlement agreement. Rather, the district court approved the settlement agreement and retained jurisdiction for the purpose of enforcing the agreement. Accordingly, the jurisdictional requirement set forth in Kokkonen is satisfied. Here, unlike in the Hayden case, the issue of jurisdiction does not relate to a financing agreement that is ancillary to the settlement agreement. Hayden, 289 F.3d at 532-33. Unlike Sheng, the present case involved no limitation on the scope of the retained

enforcement jurisdiction. Sheng, 53 F.3d at 195. Finally, unlike Miener, the district court in the present case expressly acted to designate itself as the court to hold jurisdiction over future enforcement. Miener, 62 F.3d at 1127. Because the jurisdictional requirement is met and because the present case does not involve merely a private settlement agreement, I can find no material basis upon which to distinguish the present scenario from one involving a consent decree.

The majority relies on Hazen ex rel. LeGear v. Reagen, 208 F.3d 697, 698-99 (8th Cir. 2000) to distinguish settlement agreements from consent decrees. While it is true that the court in Hazen distinguished between federal consent decrees and "private settlement agreements," Hazen did not involve a question of district court authority to retain jurisdiction over a settlement agreement for the purpose of enforcement. Id. at 699. Rather, Hazen held that a federal consent decree under the PLRA could not be enforced in state court where the consent decree failed to conform to the standards mandated by the PLRA. Id. Regarding district court enforcement authority, the Court in Buckhannon clearly stated that a private settlement agreement is distinct from a consent decree. Buckhannon, 532 U.S. 604 at n.7. This conclusion is undisputed. Hazen goes no further than Buckhannon on this issue and should not be extended as authority to assess the similarities between a settlement agreement subject to retained enforcement jurisdiction and a consent decree. Such were not the facts of Hazen.

Finally, a finding that the plaintiff class was a prevailing party avoids a circuit split with the Eleventh Circuit. See American Disability Ass'n, Inc., v. Chmielarz, 289 F.3d 1315, 1318-20 (11th Cir. 2002) (hereinafter "ADA, Inc.") (synthesizing Buckhannon and Kokkonen to hold that a plaintiff was a prevailing party where the district court approved a settlement agreement and "retained jurisdiction solely for the purpose of enforcing the Settlement Agreement."). In a well-reasoned opinion, the Eleventh Circuit first rejected the bright-line interpretation of Buckhannon that the majority adopts today:

-15-

In saying that "a party is not a prevailing party for the purposes of the ADA unless they obtain either (1) a judgment on the merits or (2) a court ordered consent decree," the district court interpreted Buckhannon to stand for the proposition that a plaintiff could be a "prevailing party" *only* if it achieved one of those two results. That reading of Buckhannon, however, is overly narrow. Indeed, the Court did not say that those two resolutions are the only sufficient bases upon which a plaintiff can be found to be a prevailing party. See Smyth v. Rivero, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in Buckhannon was intended to be interpreted so restrictively as to require that the words 'consent decree' be used explicitly."); Nat'l Coalition for Students with Disabilities v. Bush, 173 F. Supp. 2d 1272, 1278 (N.D. Fla. 2001) ("The Supreme Court's discussion of consent decrees and private settlements fell short of a *holding* that fees may not be recovered only if there is a consent decree, not a mere private settlement." (emphasis in original). *Rather, the Court used those examples to show "the 'catalyst theory' falls on the other side of the line" from cases in which plaintiffs should be considered "prevailing parties."* Buckhannon, 532 U.S. 604, 05 . . . Indeed, while observing that either a judgment on the merits or a consent decree clearly are sufficient to make the plaintiff a "prevailing party," the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties." Id. at 605.

ADA, Inc., 289 F.3d at 1319.

Next, the Eleventh Circuit noted that Kokkonen dispelled any lingering concerns regarding fine distinctions between consent decrees on the one hand and settlement agreements coupled with retained enforcement jurisdiction on the other. Id. at 1320.

Thus, it is clear that, even absent the entry of a formal consent decree, if the district court either incorporates the terms of a settlement into its final order of dismissal *or* expressly retains jurisdiction to enforce a

-16-

settlement, it may thereafter enforce the terms of the parties' agreement. Its authority to do so clearly establishes a "judicially sanctioned change in the legal relationship of the parties," as required by <u>Buckhannon</u>, because the plaintiff thereafter may return to court to have the settlement enforced. A formal consent decree is unnecessary in these circumstances because the explicit retention of jurisdiction or the court's order specifically approving the terms of the settlement are, for these purposes, the functional equivalent of the entry of a consent decree.

<u>Id.</u> (emphasis in original).

For the reasons set forth above, I agree with the Eleventh Circuit. Because the district court in the present case possessed jurisdiction to enforce the settlement agreement via court order, and because the district court exercised the requisite approval and oversight, I would hold the plaintiff class to be a prevailing party.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-